ORIGINAL

JOHN HARRIS PAER, ESQ.   #1551-0
41 B Kepola Place
Honolulu, Hawaii  96817
Telephone:  (808) 595-7179
Facsimile:  (808) 595-7179
email: paerj001@hawaii.rr.com

CHRISTIAN P. PORTER
PORTER TOM QUITIQUIT CHEE & WATTS, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 526-3011
Facsimile:  (808) 523-1171
email: cporter@btpqlaw.com

Attorneys for Plaintiff

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

SEP 08 2010

at __1__ o'clock and __15__ min. __P__M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURA ADOLPHO and THOMAS ADOLPHO,<br><br>              Plaintiff,<br><br>     vs.<br><br>HOME EQ SERVICING CORPORATION, BANK OF NEW YORK MELLON, ENLOE ENTERPRISES, INC., PRIVATE CAPITAL GROUP, INC., PARKER ENLOE and ANDREW SHIRLEY,<br><br>              Defendants. | CIVIL NO. CV10 00518 DAE KSC<br><br>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; EXHIBITS "A - G"; SUMMONS; |

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

COME NOW Plaintiffs, by and through their undersigned attorneys and alleges as follows:

INTRODUCTION

1.   This Complaint is filed and these proceedings are

instituted under the "Truth in Lending Act" 15 U.S.C. Section 1601, et seq., to rescind, recover actual and statutory damages, reasonable attorney's fees and costs of suit by reason of the Defendants' violations of that Act and the Regulations adopted pursuant thereto published at 12 C.F.R. § 226, commonly known as Regulation Z. Plaintiff seeks actual and statutory damages arising out of Defendants' misrepresentations and improper disclosures.

## JURISDICTION

2. The jurisdiction of this Court is invoked pursuant to 15 U.S.C.A. Sections 1640(e) and 1692k(d), and 28 U.S.C.A. Sections 1331, 1332 and 1337. The supplemental jurisdiction of this Court is invoked over Counts II - VI of the Complaint, which arise under state law. Jurisdiction of the state claims is proper both under diversity jurisdiction and because the factual matters underlying the federal and state claims are closely related, making disposition of both claims proper and necessary.

## PARTIES

3. Plaintiffs are natural persons and are residents and citizens of the State of Hawaii and are elders within the meaning of HRS §480-13.5.

4. Defendant Home Eq Servicing Corporation (hereinafter "Home Eq") is a foreign corporation doing business in the State of Hawaii.

5. Defendant Enloe Enterprises, Inc. (hereinafter "Enloe") is a foreign corporation doing business in the State of Hawaii.

6. Defendant Private Capital Group, Inc. (hereinafter "Private Capital") is a foreign corporation doing business in the State of Hawaii.

7. Defendant Parker Enloe is a resident and citizen of a state other than Hawaii and is doing business in the State of Hawaii.

8. Defendant Andrew Shirley is a resident and citizen of a state other than Hawaii and is doing business in the State of Hawaii.

9. Defendant Bank of New York Mellon is a national bank and is a citizen of a state other than Hawaii and is doing business in the State of Hawaii.

10. Each defendant is a citizen of a state other than the State of Hawaii.

11. There is complete diversity between the Plaintiffs and the Defendants, and the amount in controversy is greater than $75,000.00.

## FACTS

13. American Brokers Conduit, the maker of the first loan and mortgage described herein made more than 25 consumer loans and/or more than 5 consumer loans that were secured by the consumer's principal dwelling in the calendar year 2006 and 2007.

14. The current investor/owner and holder of the subject mortgage is the Bank of New York Mellon.

15. On or about February 13, 2006, Plaintiff Laura Adolpho with her friend, Kapua Sproat, attended a financial conference (investment seminar) at the Ala Moana Hotel. At the presentation they spoke of three kinds of people; that is, spenders, savers and investors.

16. They told Sproat and Adolpho that they would be in the group of investors and that they would be surprised at how quickly their money would grow.

17. There were testimonials at the conference from people who said they had invested and were doing very well with their investments.

18. At the end of the conference, all those who had more than $100,000 in equity in their homes were asked to stand. A large number of people stood up, including Sproat and Adolpho.

19. Then they asked the same for those with equity of more than $200,000 and so on until they asked for those with equity of more than $600,000.

20. At that point, Kapua Sproat and Laura Adolpho were the only ones left standing.

21. Shortly thereafter, Mr. Andrew Shirley approached Sproat and Adolpho and asked if he could come to their home to follow up on the presentation.

22. At Laura Adolpho's home, Andrew Shirley told Sproat and Adolpho and their husbands that they could make a lot of money quickly by making short term loans.

23. Andrew Shirley said that they should begin by using the equity in their homes to raise cash and that they should do this by making a mortgage loan with a negative ARM.

24. Plaintiffs were afraid of that and told him that they wanted a 30 year fixed loan.

25. Andrew Shirley told Sproat and Adolpho that within 5 years they could pay off their entire mortgage loan by making the short term investment loans he was selling.

26. Andrew Shirley told them that those loans were 180 day loans, mostly at rates of 24%, but nothing lower than 18%, and that if borrowers pay late, the substantial late payment fees would raise their income from these loans even more.

27. Plaintiffs asked Andrew Shirley what would happen if the borrowers did not pay back the loan.

28. Andrew Shirley said there was an exit strategy in that case; that is, they would get collateral for the loans that was worth far more than the loan itself so that they did not have to worry about any default on the loans they would make, since they could get more than the loan amount by selling those assets.

29. Plaintiffs believed and relied upon Mr. Shirley's representations and his self-stated expertise, and based upon those representations, they entered into a refinancing transaction of

their home mortgage.

30. Plaintiffs paid for the appraisal, but it was only a drive by appraisal. No one came to Plaintiffs' home for the appraisal.

31. Plaintiffs' then present mortgage had a balance of approximately $273,000.00. Mr. Shirley promised Plaintiffs a refinancing in the amount of $999,000.00 at 1.25% interest fixed for 30 years with payments of $3332.18 per month.

32. Plaintiffs' loan application was filled out by Mr. Shirley. A true copy of that application along with the good faith estimate and initial TILA disclosure is attached as Exhibit "A".

33. While the loan application states that the interviewer was Parker Enloe, Plaintiffs never spoke to Parker Enloe, but only spoke to Andrew Shirley.

34. Plaintiffs did not realize it at the time, but the loan application shows that Plaintiffs had no dependents.

35. Mr. Shirley knew that Plaintiffs had four dependent children and had even met two of them.

36. Plaintiffs did not realize it at the time, but their income was shown on the application as $15,872.00 which was more than twice their actual income at that time.

37. Plaintiffs did not realize it at the time, but the loan application showed that they had $43,740.00 in savings when in fact, they had about $2000.00 in savings at that time.

38. Plaintiffs had informed Andrew Shirley of the true and correct status of their financial situation at all times, including their income and the amount of their savings.

39. Mr. Shirley and Parker Enloe and Enloe Enterprises, Inc. deliberately misstated Plaintiffs' financial picture so that the loan would be approved.

40. The loan was a "stated income" loan so that the broker and lender did not require documentation to prove the income shown.

41. As instructed by Mr. Shirley at different times, Plaintiffs wired the proceeds of their refinanced mortgage loan, a total of approximately $700,000.00 to either Enloe Enterprises, Inc. or to the Private Capital Group.

42. Mr. Shirley suggested that Plaintiffs use their home equity line so that they could pay the mortgage without paying money from their own pocket.

43. He said that the returns Plaintiffs would receive should be paid into the home equity line so that they would know that the mortgage was being paid off by the income from the loans.

44. Plaintiffs have received total payments from Private Capital Group in an amount less than $160,000.00 over the past 4 years.

45. Plaintiffs have received nothing from Enloe Enterprises, Inc. nor from Mr. Shirley nor from anyone else regarding these loans.

46. At all times relevant herein, Andrew Shirley and Parker Enloe were agents of Enloe Enterprises, Inc. and of Private Capital Group, Inc. and of American Brokers Conduit.

47. Upon information and belief, the loan documents were created in a state other than Hawaii.

48. At all times relevant herein, Andrew Shirley told Plaintiffs to let him (Shirley) handle all of the paperwork and that he would get Plaintiffs the loan.

49. In reliance on those promises and representations, Plaintiffs agreed.

50. Plaintiffs reasonably relied on those promises and representations and were justified in their reliance.

51. Plaintiffs were charged a "yield spread premium" of $39,996.00 in connection with this loan, which amount was paid to Enloe Enterprises, Inc.

52. The yield spread premium was paid to the broker for arranging a higher interest rate charged to Plaintiffs than that which they would otherwise have qualified for.

53. On or about April 6, 2007, Plaintiffs entered into that loan transaction with American Brokers Conduit.

54. Plaintiffs received a Notice of Right to Cancel at closing. A true copy of that notice is attached hereto as Exhibit "B".

55. The only people present at the closing were Plaintiffs and a representative of Old Republic, Quentin Chun.

56. A true copy of the Truth in Lending Disclosure Statement for that transaction is attached hereto as Exhibit "C".

57. A true copy of the HUD-1 Settlement Statement for that transaction is attached hereto as Exhibit "D".

58. The above debt was incurred primarily for personal, family, or household purposes.

59. The above indebtedness was secured by a first mortgage on Plaintiffs' principal residence.

60. At all times relevant herein, the servicing of the loan was handled by Defendant Home Eq.

61. Plaintiffs contacted Home Eq many times during 2009 and 2010 in an effort to modify their loan, and Home Eq continuously indicated that the loan would be modified.

62. In early 2009, Plaintiffs discovered that the interest rate on their loan herein would change to as much as 12.95% per annum on May 1, 2012.

63. This realization prompted Plaintiffs to call Home Eq to see if they could help with a loan modification.

64. Home Eq initially said that they did not do modifications, but in early March, 2009, Home Eq sent a letter directing Plaintiffs to contact Ameripath Mortgage to work on a loan modification that would reduce their outstanding loan amount through a special refinancing program, and that Home Eq would work through Ameripath Mortgage.

Case 1:10-cv-00518-DAE-KSC   Document 1   Filed 09/08/10   Page 10 of 19   PageID.10

65. Plaintiffs were relieved and immediately contacted Ameripath Mortgage and spoke to their senior loan officer, Caesar Gomez.

66. Mr. Gomez took all of their information over the telephone and said that he would help Plaintiffs with their loan modification.

67. After numerous phone calls and emails, Mr. Gomez told Plaintiffs that Ameripath could not approve a $600,000.00 loan for Plaintiffs.

68. Shortly thereafter, on or about April 9, 2009, Plaintiffs received another letter via FedEx from Home Eq again instructing Plaintiffs to contact Ameripath.

69. Plaintiffs contacted Mr. Gomez again and while he said Ameripath could not make the loan, that if Plaintiffs could find a lender in Hawaii that would make the $600,000.00 loan, they could work through him to make this happen with Home Eq.

70. Plaintiffs then contacted Colin Ching at Meridian Financial who agreed to try to help Plaintiffs.

71. After many long and frustrating telephone calls and emails with Ameripath, Colin Ching finally obtained a loan commitment from gotMortgage Company for the loan amount of $600,000.00.

72. Then Mr. Gomez demanded an appraisal of the property.

73. On or about September 1, 2009, Plaintiffs received the appraisal, but since it came in lower than expected, gotMortgage said they would only loan Plaintiffs $588,000.00 and were asked to come up with $21,000.00 in order to make the loan work.

74. Plaintiffs were finally able to raise that amount with the help of their children, and finally Ameripath accepted the necessary documentation for the final step in getting the refinance.

75. When nothing happened for some time, Plaintiffs called Home Eq and were told for the first time that the payoff amount was given to Ameripath in April of 2009 for the amount of $594,961.04.

76. On or about September 28, 2009, Plaintiffs wrote Mr. Gomez and told him of the payoff amount as stated above.

77. On or about September 29, 2009, Plaintiffs called Mr. Gomez and he said that he could do nothing further because Home Eq had "pulled all of our files".

78. Plaintiffs were devastated as they had spent some eight months scrambling to meet the demands of Home Eq and Ameripath in order to obtain their promised loan.

79. Plaintiffs then called Home Eq to ask what happened and Home Eq said that they will no longer work with Ameripath.

80. On July 9, 2010, Plaintiffs, through their counsel, via certified mail, sent a letter, a qualified written request, to

Home Eq. A true copy of that letter is attached hereto as Exhibit "E".

82. On July 30, 2010, Home Eq responded to that letter. A true copy of that letter is attached hereto as Exhibit "F".

82. Defendant Bank of New York Mellon is the current owner/holder/investor of that loan.

83. Home Eq has stated that loan modifications must be handled by Home Eq.

84. By its letter of August 11, 2010, Home Eq has threatened foreclosure of Plaintiffs' home. A true copy of that letter is attached hereto as Exhibit "G".

## COUNT I - UDAP

85. Plaintiff realleges and incorporates paragraphs 1 through 84 of this Complaint.

86. All Defendants have violated Chapter 480 of the Hawaii Revised Statutes as alleged above.

87. Defendants' violations of the Truth in Lending Act constitute unfair and deceptive acts or practices in violation of H.R.S. Chapter 480.

88. The false representations as to the terms of the several loans as well as the loan application, the misrepresentation of Plaintiffs' income, the failure to give documents timely, and the excessive charges, including but not limited to the yield spread premium, in connection with the above-

described extensions of credit were immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiffs as consumers, in violation of H.R.S. Chapter 480.

89. Defendants' failure to give to Plaintiffs a proper Notice of Right to Cancel is unfair and deceptive, in violation of H.R.S. Chapter 480.

90. As a result, Plaintiffs have suffered injury to their property in an amount to be proved at trial, and are entitled to, among other things, rescission, treble damages, interest and attorneys fees and costs.

## COUNT II - Unconscionability

91. Plaintiff realleges and incorporates paragraphs 1 through 90 of this Complaint.

92. Defendants have engaged in unconscionable behavior and acts to the detriment of Plaintiffs, including but not limited to obtaining mortgages under false pretenses and by charging Plaintiff inflated and unnecessary charges, by failing to give Plaintiff required documents in a timely manner, by failing to take action to rescind the loans and mortgages and by promoting investments involving unreasonable risk and those unsuitable for Plaintiffs.

## COUNT III - Fiduciary Duty

93. Plaintiff re-alleges and incorporates the

allegations of paragraphs 1 through 92 of this Complaint.

94. At all times relevant herein, each Defendant owed Plaintiffs a fiduciary duty with regard to the above-described loans.

95. Each Defendant breached its fiduciary duty owed to Plaintiffs as described above.

96. Plaintiffs have been damaged thereby in an amount to be proved at trial.

### COUNT IV - Fraud and Misrepresentation

97. Plaintiff realleges and incorporates paragraphs 1 through 96 of this Complaint.

98. During the period leading up to the closing of their respective loans, Defendants and their agents made numerous false representations to Plaintiffs as described in the FACTS above.

99. Defendants knew or should have known that the these representations were false and misleading, and that Plaintiffs would rely on these representations and failures to their detriment.

100. Plaintiffs did rely on these representations to their detriment, and were justified in their reliance.

101. As a result, Plaintiffs have been damaged in an amount in excess of $540,000.00.

### COUNT V - Unlicensed Brokering

102. Plaintiff realleges and incorporates paragraphs 1

through 103 of this Complaint.

104. During all times relevant herein, Defendants Shirley, Enloe and Enloe Enterprises, Inc. as well as American Brokers Conduit acted as a mortgage broker within the meaning of Hawaii Revised Statutes, Chapter 454.

105. None of the above was ever licensed as a mortgage broker by the State of Hawaii.

106. None of the above were or are exempt from the requirement to be licensed as a mortgage broker.

107. The mortgage loan entered into on or about April 6, 2007 by Plaintiffs in favor of American Brokers Conduit and later transferred to Bank of New York Mellon is void ab initio and unenforceable.

COUNT VI - Fair Debt Collection

108. Plaintiff realleges and incorporates paragraphs 1 through 107 of this Complaint.

109. Within the year prior to the filing of this action, Defendant has been attempting on behalf of a third party to collect an alleged debt from Plaintiff.

110. Defendant Home Eq is a debt collector.

111. On or about August 12, 2010, Defendant Home Eq's agent contacted Plaintiffs directly at their home, even though Defendant knew that Plaintiffs were represented by counsel.

112. Home Eq has contacted Plaintiffs directly at other times after that date as well.

113. Home Eq has used unfair means to attempt to collect the above claim in violation of 15 U.S.C. §1692f.

114. Home Eq has violated 15 U.S.C. §1692c.

115. Home Eq has violated HRS Chapters 443 and 480.

WHEREFORE, Plaintiffs prays that the Court:

AS TO COUNT I

1. Award Plaintiffs damages in the amount of three times the injury to their property, but not less than $10,000.00 each for each violation;

2. Declare the above transaction null and void.

3. Award rescission of the transaction, rescission of all security interests relating to Plaintiff's property, and direct that Plaintiffs have no further obligation of payment to Defendants.

4. Order Defendants to cause a Satisfaction of Mortgage to be filed with the Bureau of Conveyances, State of Hawaii regarding their respective mortgages as described above.

5. Order Defendants to delete any adverse information regarding Plaintiff that they have reported to any consumer (credit) reporting agency; and enjoin Defendants from making, in the future, any adverse consumer report regarding Plaintiff to anyone.

AS TO COUNT II

6. Award Plaintiffs damages for property injury;

7. Award Plaintiffs damages in the amount of the injury to their persons, both physical and emotional;

8. Award Plaintiffs exemplary damages.

## AS TO COUNT III

9. Award Plaintiffs damages as will be proved at trail.

10. Award Plaintiffs exemplary damages.

## AS TO COUNT IV

11. Award Plaintiffs damages in the amount of the injury to their property;

12. Award Plaintiffs damages in the amount of the injury to their persons, both physical and emotional;

13. That the Court order Defendants to take all action necessary to terminate any security interest which any Defendant may claim on Plaintiffs' home and that the Court declare all such security interest of Defendants void, including but not limited to, any notes, mortgages and/or deeds and/or foreclosure conveyance documents;

14. That Defendants be enjoined during the pendency of this action, and permanently thereafter, from instituting, prosecuting, or maintaining foreclosure proceedings on Plaintiffs' home, from recording any deeds or mortgages regarding that property or from otherwise taking any steps to deprive Plaintiff of ownership of that property.

15. Award Plaintiffs exemplary damages.

### AS TO COUNT V

16. Award Plaintiffs damages in the amount of three times the injury to their property, but not less than $1,000.00 each;

17. Declare the above transaction regarding Plaintiffs' home null and void.

18. Award rescission of the transaction, rescission of all security interests relating to Plaintiffs' property, and direct that Plaintiffs have no further obligation of payment to Defendants.

19. Order Defendants to cause a Satisfaction of Mortgage to be filed with the Bureau of Conveyances, State of Hawaii regarding their respective mortgages as described above.

20. Order Defendants to delete any adverse information regarding Plaintiffs that they have reported to any consumer (credit) reporting agency; and enjoin Defendants from making, in the future, any adverse consumer report regarding Plaintiff to anyone.

### AS TO COUNT VI

21. Award Plaintiffs their actual damages as will be proved;

22. Award Plaintiffs statutory damages of $1000.00 each

23. Award Plaintiffs their reasonable attorneys fees and costs.

### AS TO ALL COUNTS

24. Declare Defendants' security interest in the subject property void, and enjoin Defendants from taking any action towards collection of the loan and/or foreclosure of their security interest

in the subject property;

25. Award Plaintiffs their reasonable attorneys' fees and costs of Court.

26. Award Plaintiffs such other and further relief as the Court deems appropriate.

DATED: Honolulu, Hawaii, September 3, 2010.

JOHN HARRIS PAER
CHRISTIAN P. PORTER
Attorneys for Plaintiff