JOHN HARRIS PAER   1551-0
41 B Kepola Place
Honolulu, Hawaii  96817
Telephone No.: (808) 595-7179
Facsimile No.: (808) 595-3918
email: paerj001@hawaii.rr.com

CHRISTIAN P. PORTER
REBECCA ANN SZUCS
PORTER TOM QUITIQUIT CHEE & WATTS, LLP
2125 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 526-3011
Facsimile:  (808) 523-1171
email: rszucs@btpqlaw.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LAURA ADOLPHO and THOMAS ADOLPHO, <br><br> Plaintiff, <br><br> vs. <br><br> BARCLAYS'S CAPITAL REAL ESTATE, INC., dba HOME EQ SERVICING, THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as GRANTOR TRUSTEE of the PROTIUM MASTER GRANTOR TRUST, ENLOE ENTERPRISES, INC., PRIVATE CAPITAL GROUP, INC., PARKER ENLOE and ANDREW SHIRLEY, <br><br> Defendant. | CIVIL NO. 10-00518 DAE-KSC <br><br> PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF, FILED ON SEPTEMBER 8, 2010; EXHIBITS "A - H"; CERTIFICATE OF SERVICE <br><br><br> DATE: MARCH 7, 2011 <br> TIME: 10:30 A.M. <br> JUDGE: HON. DAVID A. EZRA |

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FILED ON SEPTEMBER 8, 2010

I. INTRODUCTION.

In this action, Plaintiffs seek to rescind the loan, to have the loan declared void and unenforceable and/or to obtain the terms that were promised to her.

The Plaintiffs were promised, in writing, a 30 year fixed rate loan at 1.25% APR. They received an ARM loan with a 7.44% APR starting rate. Plaintiffs were charged a "yield spread premium" of $39,996.00 paid by the original lender to Enloe Enterprises. This fee was an illegal kickback in exchange for obtaining a higher interest rate than Plaintiffs could otherwise have qualified for.

These and other unfair and deceptive practices render the original loan null and void for all purposes under HRS §480-12. Skaggs v. HSBC Bank USA, N.A., et al. Civ. No. 10-00247 JMS-KSC (D. Haw. Dec. 22, 2010). A void loan could not be assigned to Bank of New York Mellon (hereinafter "Mellon"). Plaintiffs discuss this and their other claims below; however, contrary to Defendants' Motion, Plaintiffs have not alleged a TILA Count (because the loan was more than three years old).

With respect to Barclay's Capital Real Estate, Inc. dba Home Eq Servicing (hereinafter "Home Eq"), the claims involve unfair and deceptive acts and practices concerning the loan modification request, fraud regarding that request, Fair Debt Collection Practices Act violations, and breach of fiduciary duty.

American Brokers Conduit is no longer a going concern.

Mellon and Home Eq will be treated separately in the Argument section of this Memorandum. The exhibits attached to the Complaint are attached hereto for the Court's convenience.

II. FACTS.

Plaintiffs rely on all the facts alleged in their complaint, but highlight the facts described below as alleged in the Complaint along with their respective paragraph numbers.

14. The current investor/owner and holder of the subject mortgage is the Bank of New York Mellon.

15. On or about February 13, 2006, Plaintiff Laura Adolpho with her friend, Kapua Sproat, attended a financial conference (investment seminar) at the Ala Moana Hotel. At the presentation they spoke of three kinds of people; that is, spenders, savers and investors.

18. At the end of the conference, all those who had more than $100,000 in equity in their homes were asked to stand. A large number of people stood up, including Sproat and Adolpho.

19. Then they asked the same for those with equity of more than $200,000 and so on until they asked for those with equity of more than $600,000.

20. At that point, Kapua Sproat and Laura Adolpho were the only ones left standing.

21. Shortly thereafter, Mr. Andrew Shirley approached Sproat and Adolpho and asked if he could come to their home to follow up on the presentation.

30. Plaintiffs paid for the appraisal, but it was only a drive by appraisal. No one came to Plaintiffs' home for the appraisal.

31. Plaintiffs' then present mortgage had a balance of approximately $273,000.00. Mr. Shirley promised Plaintiffs a refinancing in the amount of $999,000.00 at 1.25% interest fixed for 30 years with payments of $3332.18 per month.

32. Plaintiffs' loan application was filled out by Mr. Shirley. A true copy of that application along with the good faith estimate and initial TILA disclosure is attached as Exhibit "A".

36. Plaintiffs did not realize it at the time, but their income was shown on the application as $15,872.00 which was more than twice their actual income at that time.

37. Plaintiffs did not realize it at the time, but the loan application showed that they had $43,740.00 in savings when in fact, they had about $2000.00 in savings at that time.

38. Plaintiffs had informed Andrew Shirley of the true and correct status of their financial situation at all times, including their income and the amount of their savings.

40. The loan was a "stated income" loan so that the broker and lender did not require documentation to prove the income

shown.

41. As instructed by Mr. Shirley at different times, Plaintiffs wired the proceeds of their refinanced mortgage loan, a total of approximately $700,000.00 to either Enloe Enterprises, Inc. or to the Private Capital Group.

46. At all times relevant herein, Andrew Shirley and Parker Enloe were agents of Enloe Enterprises, Inc. and of Private Capital Group, Inc. and of American Brokers Conduit.

51. Plaintiffs were charged a "yield spread premium" of $39,996.00 in connection with this loan, which amount was paid to Enloe Enterprises, Inc.

52. The yield spread premium was paid to the broker for arranging a higher interest rate charged to Plaintiffs than that which they would otherwise have qualified for.

53. On or about April 6, 2007, Plaintiffs entered into that loan transaction with American Brokers Conduit.

54. Plaintiffs received a Notice of Right to Cancel at closing. A true copy of that notice is attached hereto as Exhibit "B".

56. A true copy of the Truth in Lending Disclosure Statement for that transaction is attached hereto as Exhibit "C".

57. A true copy of the HUD-1 Settlement Statement for that transaction is attached hereto as Exhibit "D".

58. The above debt was incurred primarily for personal, family, or household purposes.

59. The above indebtedness was secured by a first mortgage on Plaintiffs' principal residence.

60. At all times relevant herein, the servicing of the loan was handled by Defendant Home Eq.

61. Plaintiffs contacted Home Eq many times during 2009 and 2010 in an effort to modify their loan, and Home Eq continuously indicated that the loan would be modified.

62. In early 2009, Plaintiffs discovered that the interest rate on their loan herein would change to as much as 12.95% per annum on May 1, 2012.

63. This realization prompted Plaintiffs to call Home Eq to see if they could help with a loan modification.

64. Home Eq initially said that they did not do modifications, but in early March, 2009, Home Eq sent a letter directing Plaintiffs to contact Ameripath Mortgage to work on a loan modification that would reduce their outstanding loan amount through a special refinancing program, and that Home Eq would work through Ameripath Mortgage.

65. Plaintiffs were relieved and immediately contacted Ameripath Mortgage and spoke to their senior loan officer, Caesar Gomez.

66. Mr. Gomez took all of their information over the telephone and said that he would help Plaintiffs with their loan modification.

67. After numerous phone calls and emails, Mr. Gomez told Plaintiffs that Ameripath could not approve a $600,000.00 loan for Plaintiffs.

68. Shortly thereafter, on or about April 9, 2009, Plaintiffs received another letter via FedEx from Home Eq again instructing Plaintiffs to contact Ameripath.

69. Plaintiffs contacted Mr. Gomez again and while he said Ameripath could not make the loan, that if Plaintiffs could find a lender in Hawaii that would make the $600,000.00 loan, they could work through him to make this happen with Home Eq.

70. Plaintiffs then contacted Colin Ching at Meridian Financial who agreed to try to help Plaintiffs.

71. After many long and frustrating telephone calls and emails with Ameripath, Colin Ching finally obtained a loan commitment from gotMortgage Company for the loan amount of $600,000.00.

72. Then Mr. Gomez demanded an appraisal of the property.

73. On or about September 1, 2009, Plaintiffs received the appraisal, but since it came in lower than expected, gotMortgage said they would only loan Plaintiffs $588,000.00 and

were asked to come up with $21,000.00 in order to make the loan work.

  74. Plaintiffs were finally able to raise that amount with the help of their children, and finally Ameripath accepted the necessary documentation for the final step in getting the refinance.

  75. When nothing happened for some time, Plaintiffs called Home Eq and were told for the first time that the payoff amount was given to Ameripath in April of 2009 for the amount of $594,961.04.

  76. On or about September 28, 2009, Plaintiffs wrote Mr. Gomez and told him of the payoff amount as stated above.

  77. On or about September 29, 2009, Plaintiffs called Mr. Gomez and he said that he could do nothing further because Home Eq had "pulled all of our files".

  78. Plaintiffs were devastated as they had spent some eight months scrambling to meet the demands of Home Eq and Ameripath in order to obtain their promised loan.

  79. Plaintiffs then called Home Eq to ask what happened and Home Eq said that they will no longer work with Ameripath.

  80. On July 9, 2010, Plaintiffs, through their counsel, via certified mail, sent a letter, a qualified written request, to Home Eq. A true copy of that letter is attached hereto as Exhibit "E".

81. On July 30, 2010, Home Eq responded to that letter. A true copy of that letter is attached hereto as Exhibit "F".

82. Defendant Bank of New York Mellon is the current owner/holder/investor of that loan.

83. Home Eq has stated that loan modifications must be handled by Home Eq.

84. By its letter of August 11, 2010, Home Eq has threatened foreclosure of Plaintiffs' home. A true copy of that letter is attached hereto as Exhibit "G".

III. ARGUMENT.

A. <u>The claims against Mellon are valid.</u>

While it is correct that Mellon was not involved in the original transaction, it is still subject to Plaintiffs' claims as will be shown herein. Counts I (UDAP), IV (Fraud and Misrepresenation) and V (Unlicensed Brokering) apply to Mellon to the extent that Plaintiffs seek to declare the loan void and to rescind the loan under state law. Counts II, III and VI do not apply to Mellon. Plaintiffs do not have a TILA count for rescission because the loan is more than three years old.

1. <u>The state claims are not preempted.</u>

The state claims are not preempted for at least two reasons. First, the original lender, American Brokers Conduit was

not a national bank nor a federal savings and loan association. <u>Kajitani v. Downey Savings and Loan Association, F.A.</u> 647 F. Supp. 2d 1208 (D. Haw. 2008). The preemption doctrine here applies to the field covered by federal banking laws, not by TILA. TILA is a remedial statute and it does not restrict state law claims.

Furthermore, even if preemption did apply, these claims are not based only on the TILA violations, but rather on oral misrepresentations by the Enloe Defendants as agents for the lender, and by the lender itself. ¶¶31 and 88 of the Complaint. In <u>Kajitani v. Downey Savings and Loan Association, F.A.</u>, supra, the Court held that such claims are **not** preempted, and said that "promises regarding interest rates, charges and the terms of financing is not preempted if the Kajitanis are alleging that Downey orally misled them about these terms." Plaintiffs are alleging that they were misled orally, as well as in writing. Thus, preemption does not apply.

2. <u>The original loan transaction was void ab initio.</u>

The defendants, other than Mellon and Home Eq, will be referred to as the Enloe defendants herein. The actions of the Enloe defendants, as well as those of the original lender, American Brokers Conduit, as alleged in the Complaint, present clear violations of HRS §480-2 and thus, the note and mortgage are **void ab initio** under HRS §480-12. The complaint also alleges that the

9

Enloe defendants were agents of American Brokers Conduit for purposes of this loan. ¶46. It should be noted that American Brokers Conduit and American Home Mortgage are no longer viable concerns.

The lender and the Enloe defendants misrepresented the interest rate, the APR, and the 30 year fixed rate. ¶31. They also did not provide important documents as required by state and federal law. The lender also conspired with its agent, Enloe Enterprises to charge Plaintiffs a higher interest rate than they could otherwise qualify for, and American Brokers Conduit paid Enloe Enterprises $39,996.00 for that service. This is also an illegal kickback under RESPA, 12 U.S.C. §2607, and is another violation of Chapter 480.

The lender also gave Plaintiffs a blank Notice of Right to Cancel. <u>Semar v. Platte Valley Savings & Loan Ass'n</u> 791 F. 2d 699 (9th Cir. 1986). And while the time has passed for rescission under TILA, this act is also a deceptive practice under Chapter 480. While not every TILA violation is also a deceptive practice, this one is critical to the borrowers right to rescind, and failure to give this critical information is a deceptive practice.

These (1) representations, omissions and practices were (2) likely to mislead a consumer acting reasonably under the circumstances, (3) where the representation, omission or practice was material. <u>Courbat v. Dahana Ranch, Inc.</u> 111 Haw. 254 (2006).

Thus, the lender's actions were deceptive under Hawaii law and violated HRS §480-2.

In <u>Davis v. Wholesale Motors, Inc.</u> 86 Haw. 405 (1997), the Court said "HRS §480-12 (1993) provides that 'any contract or agreement in violation of [HRS chapter 480] is void and is not enforceable at law or in equity." That Court further held that a void obligation cannot be revived by an assignment.

When a statute declares a contract or agreement to be "void" as opposed to "voidable", the offending contract or agreement is void ab initio and cannot convey or transfer any interest or value to anyone, even a holder in due course who is several transfers removed from the initial wrongdoing. <u>Beneficial Hawaii, Inc. v. Kida</u> 96 Haw. 289, 312 (2001).

The <u>Kida</u> court said, "When a statute requiring a license declares void contracts made by an unlicensed person, the violation of the statute is a defense to enforcement of the instrument <u>even against a holder in due course.</u>" (Emphasis added). Id. at 312. The Court then held that Beneficial could not enforce the note and mortgage. The same is true here.

In his concurring opinion, Judge Acoba discussed the meaning of the word "void". He said that it means ". . . an instrument or transaction that is wholly ineffective, inoperative, and incapable of ratification and which thus has no force or effect so that nothing can cure it. An unenforceable contract means a

contract having no legal effect or force in a court action. By the express terms of the statute, such a contract may not be enforced in a court of law." Id. at 319-320.

Similarly, the Ninth Circuit has also held that a "**void contract is a legal nullity**". (Emphasis Added.) Addisu v. Fred Meyer, Inc. 198 F. 3d 1130, 1137 (9th Cir. 2000).

In a recent state court decision, Cardenas v. Twyus Peahu, et al. Civ. No. 07-1-0130 (Kauai Circuit Court, Oct. 5, 2010), the court held the subject transaction "void ab initio pursuant to Section 480-12, H.R.S.; and (2) any encumbrance of the Property arising out of the void subject transaction is also void and unenforceable pursuant to Section 480-12, H.R.S., including that certain mortgage . . ." A true copy of that decision is attached hereto as Exhibit "H".

Thus, under the allegations of the Complaint, the note and mortgage are void ab initio, and the transfer of a void obligation, by assignment or otherwise, would not give Bank any rights at all. And certainly, Bank cannot prevail upon a motion to dismiss. This very issue has recently been decided in Skaggs v. HSBC Bank USA, N.A., et al. Civ. No. 10-00247 JMS-KSC (D. Haw. Dec. 22, 2010) at p. 14, citing Rundgren v. Bank of New York Mellon 2010 WL 4066878 at *6n.6 (D. Haw. Oct. 14, 2010). In Skaggs, the Court said that "the mortgage note may be void against a subsequent holder such as HSBC." The Skaggs Court also noted that, "The court

recognizes that Plaintiffs may assert a Chapter 480 claim for rescission against a subsequent assignee."

    3.  <u>The original lender engaged in fraud.</u>

Since American Brokers Conduit, the original lender, engaged in fraud through its agents, the loan is void; and thus, the lender could not assign rights it did not have. The same analysis as set forth in 2. above applies to the allegations of fraud and misrepresentation by American Brokers Conduit which result in a void note and unenforceable mortgage. <u>Greene v. Gibraltar Mortgage Investment Corp.</u> 488 F. Supp. 177, 181 (D.D.C. 1980). See also <u>Faison v. Nationwide Mortgage Corp.</u> 839 F. 2d 680 (D.C. Cir. 1987). And again, this claim cannot be dismissed upon Bank's present motion. And again, this issue was decided in <u>Skaggs v. HSBC Bank USA, N.A., et al.</u>, supra at pp. 15-16.

    5.  <u>American Brokers Conduit was an unlicenced broker.</u>

Since American Brokers Conduit and the Enloe Defendants were not licensed, Count V of the Complaint sets forth a valid cause of action. <u>Beneficial Hawaii, Inc. v. Kida</u>, supra. Thus, Count V cannot be dismissed upon Mellon's motion to dismiss.

    B.  <u>The claims against Home Eq are valid.</u>

The claims against Home Eq involve its activities as

servicer of the subject loan. The facts alleged show the many false promises made by Home Eq and the frequent changing of its position as well as the demands it made upon Plaintiffs. Through it all, Plaintiffs did everything Home Eq asked for, but were then refused the modification anyway.

Plaintiffs' claims in Counts I (UDAP), II (Unconscionability), III (Fiduciary Duty), IV (Fraud and Misrepresentation) and VI (Fair Debt Collection Practices Act) are valid against Home Eq. Count V does not apply to Home Eq.

1. Home Eq is a debt collector.

Plaintiff has alleged that Home Eq is a debt collector. Complaint ¶110. Defendant is incorrect when it argues that a loan servicer is not a debt collector. A loan servicer is a debt collector when it began servicing after default. In this case, Barclay's Capital Real Estate, Inc. dba Home Eq Servicing was not involved with this loan until after it was already in default.

"The term "debt collector" does not include ...

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due to another to the extent such activity ... (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. §1692a(6)(F)(iii).

The Senate report emphasized the application of this section to "mortgage service companies and others who service

outstanding debts for others, so long as the debts were not in default when taken for servicing." S.Rep. No. 382, 95th Congress, 1st Session 3 at 3.

This exemption is not available to a mortgage servicing company for debts taken after default. <u>Perry v. Stewart Title Co. et al.</u> 756 F. 2d 1197, 1208 (5th Cir. 1985); <u>Belin v. Litton Loan Serv., LP</u> 2006 WL 1992410 (M.D. Fla. July 14, 2006); <u>Berndt v. Fairfield Resorts, Inc.</u> 337 F. Supp 2d 1120 (W.D. Wis. 2004).

The cases cited by Defendant rely on <u>Perry v. Stewart Title Co.</u>, supra, and that case is clear that the exemption does not apply here. Therefore, Home Eq is a debt collector as alleged.

IV. CONCLUSION.

For the above reasons, Defendants' Motion to Dismiss should be denied. However, in the event that the Court is inclined to grant the motion for any reason, Plaintiffs request that they be granted leave to amend their complaint to correct any defect in pleading.

DATED: Honolulu, Hawaii, February 17, 2011

_____
JOHN HARRIS PAER
CHRISTIAN P. PORTER
Attorneys for Plaintiffs